**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

_____

| | |
|---|---|
| **CEPHUS DIXON and** ) | |
| **CHAROLETTE CLARK,** ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CITY OF MONTGOMERY,** ) | **CASE NO.:  2:26-cv-578** |
| **ALABAMA; LIEUTENANT ORIEN** ) | |
| **McCRAY, in his individual capacity;** ) | |
| **SERGEANT CLARANCE PROVO, in** ) | **JURY TRIAL DEMANDED** |
| **his individual capacity; JANE DOE 1, in** ) | |
| **her individual capacity; And JANE DOE** ) | |
| **2, in her individual capacity,** ) | |
| ) | |
| *Defendants*. ) | |

_____

**COMPLAINT**

Plaintiffs Cephus Dixon and Charolette Clark, by and through undersigned counsel,

bring this Complaint against Defendants City of Montgomery, Alabama; Lieutenant

Orien McCray; Sergeant Clarance Provo; Jane Doe 1; and Jane Doe 2, and allege as

follows:

**PRELIMINARY STATEMENT**

1.  This is a civil rights action brought under 42 U.S.C. § 1983 and the Fourth and

    Fourteenth Amendments to the United States Constitution, together with related

claims under Alabama law, arising from the unlawful strip searches of Plaintiffs Cephus Dixon and Charolette Clark.

2. On July 16, 2024, Plaintiffs — both of whom had been granted signature bonds and were awaiting immediate release — were strip searched by officers of the Montgomery Police Department ("MPD") in direct violation of MPD's own written policy and of the Fourth Amendment's prohibition on unreasonable searches.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action arises under 42 U.S.C. § 1983 to redress deprivations of rights secured by the Fourth and Fourteenth Amendments.

4. This Court has supplemental jurisdiction over Plaintiffs' Alabama state-law claims under 28 U.S.C. § 1367, as those claims arise from the same case or controversy as the federal claims.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because all acts and omissions giving rise to this action occurred in Montgomery, Alabama, within the Middle District of Alabama.

## PARTIES

**The Plaintiffs**

6. Plaintiff Cephus Dixon is an adult resident citizen of Montgomery, Alabama. At all relevant times, Plaintiff Dixon was, and remains, employed as a sworn police officer with the Montgomery Police Department.

7. Plaintiff Charolette Clark is an adult resident citizen of Montgomery, Alabama, employed as a school Principal and is the fiancée of Plaintiff Cephus Dixon.

**The Defendants**

8. Defendant City of Montgomery is a municipal corporation organized under the laws of the State of Alabama. The Montgomery Police Department is an administrative department of the City, and under Alabama law lacks the capacity to be sued in its own name; the City of Montgomery is therefore the proper municipal defendant for the acts of its police department.

9. Defendant Lieutenant Orien McCray was at all relevant times an officer or employee of the MPD acting under color of state law. He is sued in his individual capacity.

10. Defendant Sergeant Clarance Provo was at all relevant times an officer or employee of the MPD acting under color of state law. He is sued in his individual capacity.

11. Defendant Jane Doe 1 was at all relevant times an officer or employee of the MPD acting under color of state law. She is sued in her individual capacity. Her

true name is presently unknown to Plaintiffs and will be substituted upon discovery.

12. Defendant Jane Doe 2 was at all relevant times an officer or employee of the MPD acting under color of state law. She is sued in her individual capacity. Her true name is presently unknown to Plaintiffs and will be substituted upon discovery.

## FACTUAL ALLEGATIONS

### Arrest and Processing of Both Plaintiffs

13. On July 16, 2024, Plaintiffs Cephus Dixon and Charolette Clark each received a telephone call from Captain Barnes of the MPD.

14. Captain Barnes of MPD asked both Plaintiffs to come to the police station to answer questions regarding allegations of harassment.

15. Upon arriving at the station, both Plaintiff Dixon and Plaintiff Clark were arrested on misdemeanor harassment charges.

16. Following their arrests, both Plaintiffs were granted signature bonds.

17. At all relevant times, the MPD maintained a written policy governing unclothed searches of detainees.

18. That written policy expressly prohibited unclothed searches where the "detainee was subject to immediate release under bond."

4

19. Because both Plaintiffs had been granted signature bonds, both were subject to immediate release under bond within the meaning of MPD's policy.

## Facts Specific to Plaintiff Cephus Dixon

20. Before his release, Plaintiff Dixon was taken to a private room.

21. In that room, Defendants McCray and Provo ordered Plaintiff Dixon to remove all of his clothing.

22. Defendants McCray and Provo conducted, participated in, and/or watched an unclothed strip search of Plaintiff Dixon, notwithstanding their knowledge that he was a fellow sworn officer of the MPD.

23. During the search, Plaintiff Dixon was ordered to lift his genitals, bend over, spread the cheeks of his buttocks, and cough, among other directives.

24. Plaintiff Dixon was never placed in, or transported toward, the general population of the jail.

25. Following the search, Plaintiff Dixon was held in a holding cell for approximately fifteen minutes before being released.

## Facts Specific to Plaintiff Charolette Clark

26. Before her release, Plaintiff Clark was taken to the same private room, at a separate time from Plaintiff Dixon.

27. In that room, Defendants Jane Doe 1 and Jane Doe 2 ordered Plaintiff Clark to remove all of her clothing.

28. Defendants Jane Doe 1 and Jane Doe 2 conducted, participated in, and/or watched an unclothed strip search of Plaintiff Clark.

29. During the search, Plaintiff Clark was ordered to spread her legs, bend over, spread the cheeks of her buttocks, and cough, among other directives.

30. Plaintiff Clark was never placed in, or transported toward, the general population of the jail.

31. Following the search, Plaintiff Clark was held in a holding cell for approximately fifteen minutes before being released.

## The Municipal Policy, Custom, or Failure to Train

32. Notwithstanding the clear, written MPD policy prohibiting unclothed searches of detainees subject to immediate release under bond, Defendants McCray, Provo, Jane Doe 1, and Jane Doe 2 subjected both Plaintiffs to intrusive, unclothed strip searches.

33. That two separate teams of MPD personnel disregarded the same written policy against two different arrestees on the same day reflects either a widespread custom or practice within the MPD of disregarding the written policy, or a failure by the City of Montgomery to adequately train and supervise its officers on the constitutional and policy limits governing searches of misdemeanor arrestees subject to immediate bond release.

6

34. On information and belief, the City of Montgomery had actual or constructive notice that its officers required training and supervision on the written policy's bond-release exception, and that its failure to provide such training or supervision would result in violations of arrestees' constitutional rights.

35. That Defendants McCray and Provo carried out this search on a fellow sworn MPD officer, in knowing violation of the written policy, further reflects the departure from the policy was not inadvertent.

## PART I: CLAIMS OF PLAINTIFF CEPHUS DIXON

### COUNT I
### 42 U.S.C. § 1983 — Unreasonable Search (Fourth Amendment)
(Plaintiff Dixon against Defendants McCray and Provo)

36. Plaintiff Dixon realleges and incorporates by reference paragraphs 1 through 25 and 32 through 35 above.

37. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights secured by the Constitution.

38. The Fourth Amendment protects individuals against unreasonable searches. A strip search of a person arrested for a minor offense, who is not being introduced into the general jail population and against whom there is no individualized reasonable suspicion of concealed weapons or contraband is unreasonable.

39. Defendants McCray and Provo, acting under color of state law, ordered and conducted an unclothed strip search of Plaintiff Dixon notwithstanding his

misdemeanor charge, his pending signature bond, the certainty of his immediate release, the absence of any individualized suspicion, and MPD's own written policy prohibiting the search.

40. This search was objectively unreasonable and violated Plaintiff Dixon's clearly established Fourth Amendment rights.

41. As a direct and proximate result, Plaintiff Dixon suffered humiliation, emotional distress, and deprivation of his constitutional rights.

**COUNT II**
**42 U.S.C. § 1983 — Municipal Liability**
(Plaintiff Dixon against Defendant City of Montgomery)

42. Plaintiff Dixon realleges and incorporates by reference paragraphs 1 through 25 and 32 through 35 above.

43. A municipality is liable under 42 U.S.C. § 1983 where a custom or widespread practice, even if contrary to a written policy, inflicts a constitutional injury, or where the municipality's failure to train or supervise its officers amounts to deliberate indifference to constitutional rights.

44. Despite its written policy prohibiting unclothed searches of detainees subject to immediate release under bond, the City of Montgomery, through the conduct described above, maintained a custom or practice of disregarding that policy, or failed to train and supervise MPD personnel on its requirements.

8

45. That custom, practice, or deliberate indifference to training directly and proximately caused the violation of Plaintiff Dixon's Fourth Amendment rights.

### COUNT III
### Alabama State Law — Invasion of Privacy
(Plaintiff Dixon against Defendants McCray and Provo)

46. Plaintiff Dixon realleges and incorporates by reference paragraphs 1 through 25 and 32 through 35 above.

47. Alabama recognizes a cause of action for invasion of privacy based on wrongful intrusion into one's physical solitude. Defendants McCray and Provo, acting outside any lawful authority, intruded on Plaintiff Dixon's privacy by forcing him to disrobe and expose his body in the manner described above.

48. As a direct and proximate result, Plaintiff Dixon suffered mental anguish, embarrassment, and humiliation.

### COUNT IV
### Alabama State Law — Negligent Training and Supervision
(Plaintiff Dixon against Defendant City of Montgomery)

49. Plaintiff Dixon realleges and incorporates by reference paragraphs 1 through 25 and 32 through 35 above.

50. Under Ala. Code § 11-47-190, a municipality is liable for injuries caused by the neglect, carelessness, or unskillfulness of its agents or employees acting in the line of duty. The City of Montgomery negligently failed to train and supervise

Defendants McCray and Provo regarding the lawful scope of searches and MPD's own written policy

51. As a direct and proximate result, Plaintiff Dixon suffered emotional distress and injury.

## PART II: CLAIMS OF PLAINTIFF CHAROLETTE CLARK

### COUNT V
### 42 U.S.C. § 1983 — Unreasonable Search (Fourth Amendment)
(Plaintiff Clark against Defendants Jane Doe 1 and Jane Doe 2)

52. Plaintiff Clark realleges and incorporates by reference paragraphs 1 through 19 and 26 through 35 above.

53. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights secured by the Constitution.

54. The Fourth Amendment protects individuals against unreasonable searches. A strip search of a person arrested for a minor offense, who is not being introduced into the general jail population and against whom there is no individualized reasonable suspicion of concealed weapons or contraband is unreasonable.

55. Defendants Jane Doe 1 and Jane Doe 2, acting under color of state law, ordered and conducted an unclothed strip search of Plaintiff Clark notwithstanding her misdemeanor charge, her pending signature bond, the certainty of her immediate release, the absence of any individualized suspicion, and MPD's own written policy prohibiting the search.

10

56. This search was objectively unreasonable and violated Plaintiff Clark's clearly established Fourth Amendment rights.

57. As a direct and proximate result, Plaintiff Clark suffered humiliation, emotional distress, and deprivation of her constitutional rights.

## COUNT VI
### 42 U.S.C. § 1983 — Municipal Liability
(Plaintiff Clark against Defendant City of Montgomery)

58. Plaintiff Clark realleges and incorporates by reference paragraphs 1 through 19 and 26 through 35 above.

59. A municipality is liable under 42 U.S.C. § 1983 where a custom or widespread practice, even if contrary to a written policy, inflicts a constitutional injury, or where the municipality's failure to train or supervise its officers amounts to deliberate indifference to constitutional rights.

60. Despite its written policy prohibiting unclothed searches of detainees subject to immediate release under bond, the City of Montgomery, through the conduct described above, maintained a custom or practice of disregarding that policy, or failed to train and supervise MPD personnel on its requirements.

61. That custom, practice, or deliberate indifference to training directly and proximately caused the violation of Plaintiff Clark's Fourth Amendment rights.

## COUNT VII
### Alabama State Law — Invasion of Privacy
(Plaintiff Clark against Defendants Jane Doe 1 and Jane Doe 2)

11

62. Plaintiff Clark realleges and incorporates by reference paragraphs 1 through 19 and 26 through 35 above.

63. Alabama recognizes a cause of action for invasion of privacy based on wrongful intrusion into one's physical solitude. Defendants Jane Doe 1 and Jane Doe 2, acting outside any lawful authority, intruded on Plaintiff Clark's privacy by forcing her to disrobe and expose her body in the manner described above.

64. As a direct and proximate result, Plaintiff Clark suffered mental anguish, embarrassment, and humiliation.

### COUNT VIII
### Alabama State Law — Negligent Training and Supervision
(Plaintiff Clark against Defendant City of Montgomery)

65. Plaintiff Clark realleges and incorporates by reference paragraphs 1 through 19 and 26 through 35 above.

66. Under Ala. Code § 11-47-190, a municipality is liable for injuries caused by the neglect, carelessness, or unskillfulness of its agents or employees acting in the line of duty. The City of Montgomery negligently failed to train and supervise Defendants Jane Doe 1 and Jane Doe 2 regarding the lawful scope of searches and MPD's own written policy.

67. As a direct and proximate result, Plaintiff Clark suffered emotional distress and injury.

### PRAYER FOR RELIEF

Plaintiffs Cephus Dixon and Charolette Clark respectfully request that this Court:

(a) Enter a declaratory judgment that the acts, customs, and practices described herein violated the Fourth Amendment to the United States Constitution;

(b) Award compensatory damages against all Defendants, jointly and severally where appropriate, in an amount to be determined at trial;

(c) Award punitive damages against Defendants McCray, Provo, Jane Doe 1, and Jane Doe 2 in their individual capacities;

(d) Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(e) Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

Respectfully submitted,

/s/*Joseph Mitchell McGuire*
Joseph Mitchell McGuire (MCG044)
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000 office
334-517-1327 fax
jmcguire@mandabusinesslaw.com

*Attorney for Plaintiffs*